UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------- x

ULISH KERRY TERRACE BOOKER, III,                :
                                                :
                               Appellant,       :
                                                :        **MEMORANDUM &**
          -against-                             :        **ORDER**
                                                :
U.S. BANK NATIONAL ASSOCIATION AS               :        25-CV-1205 (VDO)
LEGAL TITLE TRUSTEE FOR TRUMAN 2016             :
SC6 TITLE TRUST,                                :
                                                :
                               Appellee.        :

-------------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Appellant-Debtor Ulish Kerry Terrace Booker III ("Booker III") appeals the July 18, 2025, Order of the United States Bankruptcy Court for the District of Connecticut, denying Booker III's motions (1) to dismiss or strike Appellee's motion for relief from stay ("Motion to Dismiss or Strike"), (2) for reconsideration of relief from automatic stay, and (3) ("Motion for Reconsideration) for sanctions ("Motion for Sanctions").[1]

For the reasons set forth below, Booker III is **ADMONISHED**; the Bankruptcy Court's Order is **AFFIRMED**; and Booker III's appeal is **DISMISSED.**

## I.    BACKGROUND

The underlying action concerns the property located at 9 Sanford Street, West Haven, Connecticut 06516, where at all relevant times, Booker III and his family resided.[2] In 2017, foreclosure proceedings commenced against Booker's parents, Ulish Booker Jr. and Linda

---

[1] Notice of Appeal, ECF No. 1 at 2 ¶ 5.

[2] *Id.* at 6.

Booker.[3] The Connecticut Superior Court entered a final judgment of foreclosure with respect to 9 Sanford Street on January 25, 2021, at which point ownership vested in Appellee-Creditor U.S. Bank National Bank Association as Legal Title Trustee for Truman 2016 SC6 Title Trust's ("U.S. Bank").[4]

Following the foreclosure judgment, Booker Jr. (Booker III's father), Mrs. Booker (Booker III's mother), and Booker III pursued multiple unsuccessful post-judgment motions and appeals challenging the foreclosure. U.S. Bank subsequently initiated eviction proceedings in 2024, but those efforts were stayed by bankruptcy filings.

Specifically, Booker Jr. filed for Chapter 7 bankruptcy in January 2025, three days before the Booker family's scheduled eviction date from 9 Sanford St. The filing resulted in an automatic stay, which prevented U.S. Bank from evicting the Bookers.[5] Two weeks later, U.S. Bank sought relief from the automatic stay under 11 U.S.C. § 362, which the Bankruptcy Court granted.[6] The new eviction date was set for April 4, 2026.[7]

On April 1, 2025, three days before the rescheduled eviction date, Booker III filed a new Chapter 7 bankruptcy case in the Bankruptcy Court for the District of Connecticut.[8] U.S.

---

[3] *Id.*

[4] *Id.*; *see also U.S. Bank Nat'l Assoc. v. Booker*, Case No. NNH-CV-17-6069965-S (Conn. Super. Ct. Jan. 25, 2021), Doc. No. 163.

[5] ECF No. 1 at 7.

[6] *Id.*

[7] *Id.* at 8.

[8] *Id.*

Bank once again sought relief from the stay, which the Bankruptcy Court granted on May 30, 2025.[9]

Booker III filed the Motion for Sanctions and Motion to Dismiss or Strike on May 28, 2025.[10] Booker III then filed the Motion for Reconsideration on June 13, 2025.[11] All three of those motions—the Motion to Dismiss or Strike, the Motion for Sanctions, and the Motion for Reconsideration—were denied on July 18, 2025 ("July 18 Order").[12]

Booker III timely filed a Notice of Appeal of the July 18 Order on July 29, 2025.[13] Booker III filed his brief on November 20, 2025.[14] U.S. Bank filed its opposition on December 22, 2025,[15] and Booker III replied on January 5, 2026.[16]

On June 25, 2026, this Court issued an Order to Show Cause after discovering that Booker III's briefs were riddled with cases that do not exist, incorrect quotes, and erroneous citations.[17] Specifically, in its Show-Cause Order, the Court identified the following hallucinations:

| Case | Notes |
|---|---|
| ECF No. 22 at 8: Federal Rule of Civil Procedure § 17(a), "every action | Incorrect quote. Actual quote: "*An* action *must* be prosecuted in the name of the real party in interest," (emphasis added). |

---

[9] *Id.* at 8, 12.

[10] *In re Booker*, Case No. 25-30293 (Bankr. D. Conn.), Mot. to Dismiss or Strike, Doc. No. 46; Mot. for Sanctions, Doc. No. 50.

[11] *Id.* at Doc. No. 55.

[12] *Id.* at Doc. No. 59.

[13] ECF No. 1.

[14] ECF No. 22.

[15] ECF No. 23.

[16] ECF No. 24.

[17] O.T.S.C., ECF No. 25.

| | |
|---|---|
| shall be prosecuted in the name of the real party in interest." | |
| ECF No. 22 at 8: Fed. R. Bankr. P. § 9011(b) prohibits filing papers "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." | Incorrect quote. Actual quote: "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase *litigation costs*," (emphasis added). Appellant's quote is from Fed. R. Civ. P. 11. |
| ECF No. 22 at 3, 9: *BCB Contracting Services, LLC v. United States*, 104 B.R. 771, 775 (S.D. Ariz. 2021) | Nonexistent case. Page 771 of Volume 104 of the Bankruptcy Reporter lands in the middle of *In re Crouch*, a bankruptcy case from West Virginia (104 B.R. 770). That is a case from 1989. That case does not discuss sanctions. |
| ECF No. 22 at 3, 9: *In re Gorges*, 590 B.R. 771 (Bankr. D. Ariz. 2018). | Erroneous citation. This case is from Michigan, not Arizona. |
| ECF No. 22 at 10: *In re Mann*, 513 B.R. 34, 42-43 (Bankr. E.D.N.Y. 2014) (holding that a bankruptcy court may not overturn a state-court foreclosure judgment) | Nonexistent case. This citation leads to a case called *In re Richmond*. |
| ECF No. 22 at 10: *Carter v. Flagler Hospital, Inc.*, 411 B.R. 730 (Bankr. S.D. Fla. 2009) (rejecting a bankruptcy court's attempt to re-examine a state-court foreclosure). | Erroneous citation. This case is from M.D. Fla., not S.D. Fla. |
| ECF No. 22 at 4: *Torres v. First Nat. Bank of Connecticut*, 201 Conn. 247, 251 (1991) (emphasizing the statutory requirement of a recorded decree) | Nonexistent case. This citation goes to the middle of *State v. Silva* (201 Conn. 244). That was a criminal case in the CT Supreme Court in 1986 concerning admissibility of testimony. |
| ECF No. 22 at 4: *In re Nassau*, 411 B.R. 730 (S.D. Fla. 2009). | Erroneous citation. This is the citation to *In re Carter,* a previously cited case. |
| ECF No. 22 at 12: *Mathews v. Dillon*, 489 U.S. 567 (1989) (due-process requires a meaningful opportunity to be heard). | Nonexistent case. Page 567 lands in the middle of a case called *Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.* (489 U.S. 561). That case explicitly does not discuss due process. The Court could not find any case called "*Mathews v. Dillon*." |
| ECF No. 24 at 2, 7–8: *Boyd, v. Connecticut*, 2022 Conn. Dist. LEXIS 10098140 (D. Conn. Aug. 24 2022) | Nonexistent case. There are three "*Boyd v. Connecticut*" cases; they are from 1992, 1995, and 2011. None of these cases have the provided Lexis number. |
| ECF No. 24 at 2: *In re Sherry Easley*, 2022 Bankr. LEXIS 10455845 (Bankr. D. Conn. Mar. 30 2022) | Nonexistent case. There are no "*Easley*" bankruptcy cases in Connecticut, nor were any |

4

| | bankruptcy cases decided on March 20, 2022 in Connecticut. This Lexis number does not exist. |
|---|---|
| ECF No. 24 at 2: *Baerga v. Hartford*, 2022 Conn. Dist. LEXIS 10098455 (D. Conn. Nov. l0 2022) | Erroneous citation. The case exists, but the Lexis number is inaccurate. Appellant also does not reference this case outside the Table of Authorities. |

In sum, the Court was able to identify at least two inaccurate quotes, four erroneous citations, and six fabricated cases. These hallucinations clearly indicated to the Court the use of generative artificial intelligence ("AI") in the preparation of these briefs.

Booker III responded to the Order to Show Cause on July 30, 2026.[18] In his response, Booker III apologized to the Court "for the citation errors, incorrect quotations, and erroneous authorities contained in the briefs."[19] However, the bulk of his response was devoted to reasserting the merits of his appeal and advancing new arguments, rather than addressing the issues raised in the Order to Show Cause.

A Show-Cause hearing was held on August 3, 2026.[20] At the hearing, Booker III again apologized to the Court and admitted that he had used several generative AI programs—including Gemini Pro, Perplexity, Cetient Legal AI, and ChatGPT—to prepare his filings. He explained that he developed the legal arguments himself based on the Federal Rules of Civil Procedure, which he accessed through Justia Law. He then attempted to supplement those arguments by entering the relevant rules—particularly Rule 17—and the accompanying cases from Justia into the AI programs to generate additional supporting authority. Although Booker III initially maintained that he had "cross-checked" and "verified" most of the cited cases

---

[18] Reply to Order to Show Cause, ECF No. 31.

[19] *Id.* ¶ 1.

[20] ECF No. 32.

through Google, Justia, or other AI tools, he ultimately admitted that he had only "briefly read" some of the cited cases and had not read others at all. At other points during the hearing, however, he stated that because he had drafted the briefing nearly a year earlier, he could not confirm that he had read any of the cited cases before including them in his filings.

## II.  RULING ON VIOLATION OF RULE 11

### A.  Legal Standard

Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") dictates that "[e]very pleading, written motion, and other paper must be signed by . . . a party personally if the party is unrepresented." Rule 11(b) states, in relevant part, that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…

Fed. R. Civ. P. 11(b). Rule 11 "is not aspirational; it is the minimal standard of honesty that keeps the adversarial process tethered to reality." *Mattox v. Prod. Innovations Rsch., LLC*, 807 F. Supp. 3d 1341, 1347–48 (E.D. Okla. 2025). In short, Rule 11(b) imposes an affirmative duty on parties and counsel to ensure that all papers filed with the Court are factually and legally well-founded. "Under Rule 11, a court may sanction an attorney [or unrepresented party] for, among other things, misrepresenting facts or making frivolous legal arguments." *Muhammad v. Walmart Stores East, L.P.,* 732 F.3d 104, 108 (2d Cir. 2013) (per curiam).

"Merely incorrect legal statements are not sanctionable under Rule 11(b)(2)." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 391 (2d Cir. 2003). "The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011). A legal contention is frivolous because it has "no chance of success" and there "is no reasonable argument to extend, modify or reverse the law as it stands." *Id.* (quoting *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 25 (2d Cir.1995)). The filing of papers "without taking the necessary care in their preparation" is an "abuse of the judicial system" that is subject to Rule 11 sanction. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990). Rule 11 creates an "incentive to stop, think and investigate more carefully before serving and filing papers." *Id.* (cleaned up).

Rule 11 obligations take on particular significance in the context of filings prepared with the assistance of generative AI. "Federal courts increasingly confront filings prepared with the assistance of generative artificial intelligence. While such tools can enhance efficiency, they also create a new professional hazard, synthetic authority presented as precedent." *Mattox*, 807 F. Supp. 3d at 1347. The main problem with filings that rely on generative AI, of course, is that they often include hallucinations. The Court has defined a "hallucination" in the context of AI-assisted legal research as one of three errors:

> (1) fabricated cases (whether a nonexistent case name and citation, an existing case name with an invented or erroneous citation, or a real citation that leads to a wholly unrelated decision); (2) fabricated quotations from actual cases; and (3) misstatements of law (representations of legal rules, standards, or holdings that are inaccurate, incomplete, or unsupported by any real authority, including AI-generated summaries that distort or materially alter what a case actually decided).

*See Andre v. Warden, FCI Danbury*, 827 F. Supp. 3d 294, 305 (D. Conn. 2025).

7

"In an adversarial system that depends on litigants to candidly present accurate authority, such hallucinations mislead the Court, forcing it either to expend substantial resources verifying fabricated material or, worse, risk reliance on an erroneous statement of the law." *Id.* Numerous additional concerns abound:

> "Many harms flow from the submission of fake opinions . . . The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity."

*Id.* at 305–06 (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023)).

The Court previously adopted, in part, the analytical framework set forth by the *Mattox* court while confronting a pro se party who used artificial intelligence in drafting his pleadings.[21] *Id.* at 306. Under that framework, once "a pleading containing fabricated citations or nonexistent law has been identified and a hearing held," the court considers two principal factors in determining whether sanctions are warranted. *Id.* Specifically, the Court considers:

> 1. Verification and Inquiry — Whether counsel [or the unrepresented party] conducted a reasonable, human-based verification of every cited authority before filing. A reasonable inquiry requires more than reliance on an automated tool; it demands independent confirmation through recognized primary legal sources. The signature of an attorney [or the unrepresented party] certifies human diligence, not mechanical output.

---

[21] The full *Mattox* test includes an additional factor titled "Accountability and Supervision." The *Mattox* court explained the factor as: "Whether supervising or associated attorneys exercised oversight consistent with [ABA] Model Rules [of Professional Conduct] 5.1 and 5.3 and whether firm-level safeguards existed to prevent recurrence. The inquiry extends beyond the drafter to the institutional culture that permitted unverified authority to reach the docket. A firm's silence or absence of policy does not immunize it; it implicates it." 807 F. Supp. 3d at 1348. As in *Andre*, the Court omits this factor, finding it to be inapplicable to pro se litigants.

8

2. Candor and Correction — Whether counsel [or the unrepresented party] promptly disclosed the use of AI and corrected the record once inaccuracies were discovered. Candor after filing weighs heavily in mitigation; concealment or minimization aggravates the violation. The duty of candor extends beyond the moment of signature, it continues for as long as the filing remains before the Court.

*Id.* (quoting *Mattox*, 807 F. Supp. 3d at 1348).

A court may "initiate sanctions *sua sponte* by issuing an order 'to show cause why conduct specifically described in the order has not violated Rule 11(b)." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 543 (2d Cir. 2023) (quoting Fed. R. Civ. P. 11(c)(3)). The power to *sua sponte* impose Rule 11 sanctions is akin to a court's inherent power of contempt, and like contempt, a district court may *sua sponte* sanction a litigant only upon finding they acted with "subjective bad faith." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d. Cir. 2003). Subjective bad faith is a "heightened *mens rea* standard" designed to promote zealous advocacy while deterring improper submissions. *Id*. at 91. The heightened standard can be satisfied upon finding that a litigant made a "misleading representation to a district court for an improper purpose." *Rankin v. City of Niagara Falls*, 293 F.R.D. 375, 387 (W.D.N.Y. 2013), *aff'd sub nom,* 569 F. App'x 25 (2d Cir. 2014). "Courts in this circuit have repeatedly found that presenting AI-generated hallucinations as valid caselaw constitutes subjective bad faith." *Andre*, 827 F. Supp. 3d at306 (collecting cases).

### B.    Discussion

#### 1.    Application of Rule 11

Booker III's briefs are riddled with hallucinations, clearly indicating the use of generative artificial intelligence in drafting them. Applying the framework set forth in *Mattox* the Court finds the first factor—verification and inquiry—weighs in favor of sanctions because

Booker III failed to conduct a reasonable verification of the authorities cited in his briefing before submitting them. As he admitted at the hearing, Booker III relied on several AI platforms to generate additional legal authorities, but he only "briefly read" some of the cited cases and did not read others at all. He also acknowledged that, rather than independently verifying the authorities through recognized legal sources, he often attempted to verify the output of one AI program by consulting another AI program. At other points during the hearing, he stated that because he drafted the briefs nearly a year earlier, he could not confirm that he had read any of the cited cases before including them in his filings. Rule 11, however, requires more than reliance on AI-generated output or cursory review; it requires a reasonable inquiry into the legal and factual basis of every filing before it is presented to the Court. Had Booker III undertaken the verification that Rule 11 requires, he would have discovered the fabricated citations, quotations, and misstatements of law that the Court later identified. His failure to do so violated Rule 11's duty of reasonable inquiry.

On the second factor—candor and correction—the Court finds this factor weighs neither in favor nor in mitigation of sanctions. Booker III apologized to the Court in his response to the Order to Show Cause, but he did not disclose in that response that he had used AI to prepare his briefs. At the Show-Cause hearing, although Booker III eventually admitted using multiple AI platforms, he was not immediately forthcoming about the extent of his reliance on those tools or the manner in which he verified the authorities they generated. Instead, he repeatedly emphasized that he had developed the legal arguments himself using the Federal Rules of Civil Procedure and cases identified through Justia. Only after sustained questioning by the Court did Booker III acknowledge that he had only "briefly read" some of the cited cases, had not read others, and ultimately could not say whether he had read any of

10

them before filing because the briefs had been drafted nearly a year earlier. Likewise, when asked what he would do differently in the future, Booker III did not initially identify the need to independently read and verify the authorities cited in his filings, arriving at that answer only after repeated questioning by the Court. Although the Court credits Booker III's apology and accepts that he ultimately acknowledged his deficient verification practices, his disclosures were neither prompt nor complete. Accordingly, this factor does not meaningfully mitigate the Rule 11 violation, but neither does it independently warrant enhanced sanctions.

"Courts in this circuit have repeatedly found that presenting AI-generated hallucinations as valid caselaw constitutes subjective bad faith." *Andre*, 827 F. Supp. 3d at 306 (collecting cases). Accordingly, the Court has the power here to impose sanctions *sua sponte*.

### 2.    Imposition of Sanctions

"A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). A court has available a variety of possible sanctions to impose for Rule 11 violations, including, but not limited to, "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* A court could also "strik[e] the offending paper" and "issu[e] an admonition." Fed. R. Civ. P. 11, advisory committee's note to 1993 Amendments.

Courts across the country have issued a variety of sanctions and other consequences against pro se litigants who engaged in the use of unverified AI. Some have stricken filings containing hallucinations or even dismissed cases based on those filings. *See, e.g., Andre*, 827 F. Supp. 3d at 313 (striking motion containing AI-generated hallucinations where the pro se

11

litigant used an undisclosed ghostwriter and initially denied using AI); *Merritt v. Moore*, No. W2025-01131-COA-R3-CV, 2026 WL 2098349, at \*5 (Tenn. Ct. App. July 21, 2026) (dismissing appeal of matter based, in part, on pro se litigant's inclusion of inaccurate authorities)*; P-Three Dev., LLC v. Therm Flo, Inc.*, 2026 IL App (1st) 250567-U, ¶ 51, 2026 WL 1880326 (Ill. App. Ct. June 30, 2026) (striking pro se intervenor-appellant's brief and dismissing appeal). Others have issued admonishments and warnings. *See, e.g., Andre*, 827 F. Supp. 3d at 313 (admonishing pro se litigant for inclusion of AI-generated hallucinations); *Munoz Corrales v. BPG Inspection, LLC*, No. 25CA1824, 2026 WL 1915733, at \*2 n.3 (Colo. App. July 2, 2026) (same); *Otteson v. JPMorgan Chase Bank NA*, No. CV-25-08198-PCT-DWL, 2026 WL 2069919, at \*7 n.16 (D. Ariz. July 17, 2026) (warning pro se litigant after court discovered inaccurate AI-generated citation).

In imposing consequences here, the Court has considered the particular circumstances of this case and recognizes that the cases discussed above involve a range of conduct warranting different forms and levels of sanctions. Booker III's conduct was serious. His briefs contained numerous fabricated authorities, erroneous citations, and inaccurate quotations that required the Court to expend substantial time and resources identifying and verifying the cited authorities. Moreover, Booker III did not promptly disclose his use of AI and was not fully forthcoming regarding his verification process until after sustained questioning at the Show-Cause hearing. These considerations weigh in favor of a meaningful sanction.

At the same time, Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Although some courts have stricken AI-generated filings or dismissed actions, the Court concludes that those sanctions are unnecessary here. This is the first time Booker III has been

12

confronted by this Court regarding his improper use of AI, and there is no indication that a lesser sanction would be insufficient to deter future misconduct. The Court therefore declines to strike the briefs. Instead, the Court concludes that a formal admonishment and warning appropriately balance the seriousness of Booker III's conduct with Rule 11's deterrent purpose.

For the foregoing reasons, Booker III is **ADMONISHED** for violating Rule 11 and is **WARNED** that any future filing containing fabricated authorities, inaccurate quotations, erroneous citations, or other AI-generated hallucinations—or any future failure to conduct a reasonable, human-based verification of authorities before filing—may result in substantially more severe sanctions, including monetary sanctions, the striking of filings, dismissal of claims or appeals, or any other sanction authorized by Rule 11 or the Court's inherent authority.

## III.    RULING ON THE MERITS

Having addressed the Rule 11 issue, the Court turns to the merits of Booker III's appeal, which fail for the reasons set forth below.

### A.    Legal Standard

Under 28 U.S.C. § 158(a)(1), district courts have jurisdiction to hear appeals from bankruptcy cases. *See In re Porzio*, 622 B.R. 134, 137 (D. Conn 2020). On appeal, an appellant waives issues when he "provides no explanation why the bankruptcy court erred . . . ." *In re Kirwan Offices S.à.R.L.*, 792 Fed. App'x 99, 104 (2d Cir. 2019). Additionally, an appellant waives any issue that is not raised in bankruptcy court or raised only in passing reference. *In re Nordlicht*, 115 F.4th 90, 114 (2d Cir. 2024).

With respect to pro se litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F.

13

App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)). At the same time, this special solicitude does not mean courts will "excuse mistakes [or] . . . frivolous or vexatious filings by pro se litigants." *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 529 n.1 (2d Cir. 2005) (cleaned up).

### 1.      Review of Orders on Dismissal

In an order denying a Motion to Dismiss or Strike, "[t]he bankruptcy court's legal conclusions are evaluated de novo [and] its findings of fact are subject to a clearly erroneous standard." *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009). De novo review allows a court "to decide the issue as if no decision had been previously rendered." *In re Reilly*, 245 B.R. 768, 772 (2d Cir. BAP 2000) (cleaned up). "A finding is only clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Vincent Andrews Mgmt. Corp.*, 507 B.R. 78, 81 (D. Conn. 2014) (cleaned up).

### 2.      Review of Orders On Reconsideration and Sanctions

A bankruptcy court's denial of a motion for reconsideration is reviewed for abuse of discretion. *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003). A bankruptcy court's decision regarding sanctions is also reviewed for abuse of discretion. *In Re Highgate Equities, Ltd.*, 279 F.3d 148, 152 (2d Cir. 2002). A bankruptcy court "abuses" or "exceeds" its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

14

### B.    Discussion

Booker III appeals three rulings within the July 18 Order, and the Court considers each of them in turn.

#### 1.    Motion to Dismiss or Strike

Booker III first objects to the Bankruptcy Court's denial of his Motion to Dismiss or Strike, primarily challenging the Bankruptcy Court's finding that the U.S. Bank has standing in the underlying case.[22] In the Bankruptcy Court, Booker III advanced two arguments in support of his motion. The Court takes each of these arguments in turn.

First, Booker III claims that the Bankruptcy Court erred by holding that U.S. Bank has standing because the party designation, in the case caption, lists "'U.S. Bank National Association as legal title trustee for Truman 2016 SC6 Title Trust, together with successors and assigns' and adds Trucap REO Corp."[23] Booker III contends that adding the language "successors and assigns" defeats U.S. Bank's standing because the successors and assigns are unknown, and thus the action is not being "prosecuted in the name of the real party in interest," as required by Fed. R. Civ. P. 17.[24] Accordingly, per Booker III, U.S. Bank does not have standing.[25]

---

[22] Booker III appeals the Bankruptcy Court's denial of his Motion to Dismiss or Strike, Motion for Reconsideration, and Motion for Sanctions. Because his appellate brief does not identify which arguments are directed to each challenged order, the Court construes the brief liberally and addresses any argument that could reasonably be understood as challenging the denial of the Motion to Dismiss or Strike in that section of the opinion. Arguments that pertain exclusively to the denial of reconsideration or sanctions are addressed only in those respective sections.

[23] ECF No. 22 at 8.

[24] *Id.*

[25] *Id.*

15

Booker III next claims that the foreclosure decision from the state court is void under Conn. Gen. Stat. § 49-17 because there was no recorded disclosure decree.[26] Booker III is likely referring to that statute's requirement that a "decree of foreclosure [must] be recorded in the land records in the town in which the land lies." Conn. Gen. Stat. § 49-17. Booker III claims that, despite the certificates of foreclosure in the West Haven land records, the lack of a formal disclosure decree in the land records means title of 9 Sanford St. never vested in U.S. Bank.[27] Therefore, per Booker III, "U.S. Bank never acquired a valid interest in the property . . . [so] it lacked the statutory standing required under 11 U.S.C. § 362(d)(1) to obtain relief from the automatic stay."[28]

The state court has already addressed Booker's standing arguments and found they do not have merit.[29] Therefore, the Rooker-Feldman doctrine, which prevents federal district courts from reviewing state court decisions, bars both challenges to U.S. Bank's standing. "[T]he only federal court to which a litigant may appeal from a state-court judgment is the Supreme Court of the United States." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023); *see also Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). The state court ruled that title to 9 Sanford Street had, in fact, vested in U.S. Bank,

---

[26] *Id.* at 11.

[27] *Id.*

[28] *Id.*

[29] *See In re Booker*, Case No. 25-30293 (Bankr. D. Conn.), Doc. No. 95 at 5 (recounting the times Booker III and his family have raised similar arguments); *In re Booker*, Case No. 25-30017 (Bankr. D. Conn.), Doc. No. 77 ("the state court previously determined U.S. Bank has standing to foreclose on the mortgage here.").

and the Bankruptcy Court correctly followed that judgment.[30] Accordingly, this Court will not revisit or disturb those findings.

Booker III's arguments also fail on the merits. As to his first argument, the inclusion of the phrase "successors and assigns" in the caption or party designation does not alter U.S. Bank's status as the holder of title or otherwise defeat its standing. Nor do the two cases relied upon by Booker III, or any other case of which the Court is aware, compel a different result.[31]

As to Booker III's second argument, Conn. Gen. Stat. § 49-17 is inapplicable in this case because it governs situations where legal title was never conveyed to the mortgagee. Under Connecticut law, however, execution of a mortgage conveys legal title to the mortgagee. *See Conf. Ctr. Ltd. v. TRC-The Rsch. Corp. of New England*, 455 A.2d 857, 860 (Conn. 1983); Conn. Gen. Stat. § 47-36h.[32] Accordingly, § 49-16—not § 49-17—controls here. Conn. Gen. Stat. § 49-16 requires only that certificates of foreclosure be recorded after title becomes absolute. Booker III acknowledges that the West Haven land records contain three certificates of foreclosure, so his argument that the absence of a recorded foreclosure decree invalidates U.S. Bank's interest fails.

Booker III also raises additional arguments that this Court cannot consider because they were not raised in the underlying case.[33] *See In re Nordlicht*, 115 F.4th at 114. Because Booker

---

[30] ECF No. 1 at 11, 13; *see also In re Booker,* Case No. 19-30787 (Bankr. D. Conn.), Mem. Decision and Order, Doc. No. 120. at 1–2; Case No. 25-30017, ECF No. 99 at 2 (noting that title to 9 Sanford St. vested in U.S. Bank in 2021).

[31] Booker III cites "*In re Vargas*, 396 B.R. 511, 514," which is not a real case, and *Summers v. Perkins*, 81 P.3d 1141 (Colo. Ct. App. 2003), which is not relevant to Booker III's argument.

[32] *See U.S. Bank Nat'l Assoc. v. Booker*, Case No. NNH-CV-17-6069965-S (Conn. Super. Ct. May 9, 2018), Doc. No. 119 at 59–71 ("Open-End Mortgage Deed").

[33] Nevertheless, the Court notes that none of these newly-introduced arguments are persuasive. For example, Booker III contends the Bankruptcy Court failed to enforce 11 U.S.C. § 524(a), which

III's standing arguments are barred by the Rooker-Feldman doctrine and his remaining arguments were not raised in the underlying case, the Bankruptcy Court properly denied Booker III's Motion to Dismiss or Strike.

### 2. Motion for Reconsideration

Booker III contends that the Bankruptcy Court erred in denying his Motion for Reconsideration. Because the Court has already concluded that Booker III's arguments fail under the less deferential standards applicable to the Motion to Dismiss or Strike, those same arguments necessarily fail under the more deferential abuse-of-discretion standard governing the denial of reconsideration. As to Booker III's arguments directed specifically to the denial of reconsideration, the Bankruptcy Court did not base its decision on an error of law or apply the wrong legal standard, rely on clearly erroneous findings of fact, or otherwise render a decision outside the range of permissible outcomes.

Because Booker III did not specify the rule under which he sought reconsideration, the Bankruptcy Court construed the motion as seeking relief under both Rule 59 and Rule 60 of the Federal Rules of Civil Procedure, as incorporated by Federal Rules of Bankruptcy Procedure 9023 and 9024, respectively. Reconsideration under Rule 59 is reserved for rare

---

voids personal liability of the debtor after a discharge order. ECF No. 22 at 11–12. But Booker III did not receive a discharge order until March 5, 2026, almost eight months after the July 18, 2025, Order. Case No. 25-30293, Order of Discharge, ECF No. 102. Since the Discharge Order had not yet existed at the time the court decided the underlying motions, Booker III did not and could not raise a challenge based on a discharge order in the underlying case. The Court thus declines to consider it here.

Booker III also asserts that Linda Booker—who transferred her interest in the foreclosed-on property to Booker Jr. in 2013—was deprived of due process because of her "heir interest" in the property. *See* Quit Claim Deed, ECF No. 22-3; ECF No. 22 at 12. Not only does Booker III not raise this issue in the underlying case, he also does not cite any relevant cases or statutes explaining how the purported doctrine of "heir interest" applies in this matter.

occasions and "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Survs., Inv. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up). Rule 60(a) allows a court to grant a party relief from a final judgment or order in cases or clerical mistakes or oversights, while "Rule 60(b) provides a mechanism for extraordinary judicial relief available only if the moving party demonstrates exceptional circumstances . . . such as where the court failed to consider evidence or binding authority." *Schneiderman v. Am. Chem. Soc'y*, 172 F.4th 158, 190 (2d Cir. 2026) (cleaned up).

Here, Booker III requested reconsideration of the court's "[o]rder dated June 2, 2025."[34] Since the Bankruptcy Court did not enter any orders on that day, it interpreted Booker III's motion as a request for reconsideration of the order granting U.S. Bank relief from the automatic stay dated May 30, 2025.[35] The Bankruptcy Court then correctly held that reconsideration under either Rule 59 or 60 was not appropriate. Booker III agrees that he "raised no new evidence or change in law."[36] Although he nevertheless argues that the Bankruptcy Court erred in denying reconsideration under Rules 59 and 60, he identifies no alternative basis that would have justified reconsideration.

Booker III has not raised valid grounds for reconsideration, so the Bankruptcy Court did not abuse its discretion when it denied Booker III's Motion for Reconsideration.

---

[34] ECF No. 1 at 11–12.

[35] *Id.*

[36] ECF No. 22 at 7.

### 3.    Motion for Sanctions

Booker also challenges the Bankruptcy Court's denial of his Motion for Sanctions. The Bankruptcy Court denied the Motion for Sanctions, at least in part, because Booker III did not follow the safe harbor provision, which requires a movant to serve the opposing party with a motion for sanctions at least twenty-one days before filing with the court. Fed. R. Bankr. P. 9011(c)(2)(B).[37] In doing so, the Bankruptcy Court did not abuse its discretion.

Booker III does not claim, and the record does not indicate, that he served U.S. Bank with a copy of the Motion for Sanctions twenty-one days before filing with the Bankruptcy Court, or at any point prior to filing. "Compliance with the safe harbor is a necessary precondition to the imposition of Bankruptcy Rule 9011 sanctions." *In re Feldman*, 606 B.R. 189, 197–98 (Bankr. E.D.N.Y. 2019) (citing *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995)). Thus, Booker III did not comply with Rule 11, and the Bankruptcy Court did not abuse its discretion when it denied Booker III's Motion for Sanctions. The Bankruptcy Court used the correct legal standard, did not rely on erroneous facts, and reached a decision within the range of permissible decisions. The Court thus affirms the Bankruptcy Court's denial of sanctions.

## IV.    CONCLUSION

Accordingly, the Court **ADMONISHES** Booker III for his Rule 11 violations, **AFFIRMS** the Bankruptcy Court's July 18, 2025 Order, and **DISMISSES** Booker III's appeal. The Clerk of Court is respectfully directed to close the case.

---

[37] ECF No. 1 at 15.

**SO ORDERED.**

Hartford, Connecticut
August 5, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

21